UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CONTINENTAL CASUALTY COMPANY,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br><br>MIKE SCULLY and CARLA SCULLY,<br><br>　　　　　　　　Defendants. | CASE NO: 09-CV-1970 W (NLS)<br><br>**(1) ORDER DENYING MOTION TO DISMISS (DOC. NO. 13.)**<br><br>**(2) ORDER DENYING MOTION TO STRIKE (DOC. NO. 12.)** |

Pending before the Court are Plaintiff The Continental Casualty Company's ("Continental") motions to dismiss and to strike. Defendants Mike Scully and Carla Scully (collectively "Defendants") oppose the motions.

The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the following reasons, the Court **DENIES** both of Continental's motions.

I.　B<small>ACKGROUND</small>

Continental is an Illinois corporation with its principal place of business in Chicago, Illinois. (Doc. No. 1.) Continental issues marine insurance policies in California through its marine manager BoatU.S. (Id.) The Defendants are a married couple who reside in Maricopa County, Arizona. (Doc. No. 10.)

In March 2006, Mike Scully purchased a 33-foot Sea Ray Cruiser (the "Vessel") for approximately $197,000. (Id.) The following year, Defendants obtained an insurance policy for the Vessel (the "Policy") from Continental, through BoatU.S. (Doc. No. 1; Ex. A.) The Policy named Continental as the insurer and Mike Scully and Carla Scully as the insured. (Doc. No. 1; Ex. B.) The Policy covered the Vessel for one year commencing on March 8, 2007, through March 8, 2008. (Doc. No. 1.) On March 8, 2009, the Defendants renewed the Policy for one year. (Id.)

Pursuant to the Policy, the Vessel was home-ported at Shelter Island, San Diego, California. (Id.) The Policy provided coverage for the Vessel and its equipment in the amount of $197,512 within the navigational limits of "U.S. Pacific Coastal Waters" (Doc. No. 1 Ex. B) and covered any accidental loss to the Vessel up to the Policy limit. (Doc. No. 1; Ex A at 2). The Policy also contained the following "Fraud and Concealment" provision:

> "There is no coverage from the beginning of this policy if you or your agent has omitted, concealed, misrepresented, sworn falsely, or attempted fraud in reference to any matter relating to this insurance before of after any loss."

(Doc. No. 1; Ex. A at 10.)

On or about April 21, 2009, while the Policy was in effect, Mike Scully commenced a solo fishing expedition from Shelter Island, San Diego to Santa Catalina Island, off the Southern California Coast. (Doc. No. 1.) He piloted the Vessel to the far side of the island and anchored approximately half of a mile off-shore to fish. (Doc. No. 17.) At approximately midnight, Mike Scully was below deck lubricating his fishing tackle with WD-40 by candle light, when he accidently over-sprayed the WD-40 and it, or its fumes, came into contact with the candle flame causing a fire to erupt onboard the Vessel. (Id.) As a result of the fire, he abandoned the Vessel in a dinghy and was discovered by rescue workers on a nearby shore the following morning. (Id.) Prior to this voyage, Mike Scully had never been to Santa Catalina Island or anchored the Vessel alone, overnight, at sea. (Doc. No. 1.)

Following the fire, Defendants submitted an insurance claim to Continental, through BoatU.S., for the damage sustained to the Vessel. (Id.) As part of the claims process, Continental obtained estimates to repair the damage.(Id.) Continental also sent an investigator to obtain a recorded statement from Mike Scully concerning how the fire occurred. (Id.)

In his recorded statement to the Continental investigator, Mike Scully stated that he had been asleep above deck when he was awoken by smoke and that his only explanation for how the fire started was that he had left a candle burning in the bathroom below deck. (Doc. No. 1 at ¶ 14.) When asked by the Continental investigator if there was anything else he could think of that might explain the fire, Mike Scully replied "Just a candle that's it. There's no other reason." (Id.)

Subsequently, Continental sent an attorney to obtain an official sworn statement from Mike Scully, in the form of an Examination Under Oath ("EUO"), also concerning how the fire occurred. (Id.) During the EUO, Mike Scully testified that he was not asleep when the fire started. He then revealed the version of events that included his accidentally lighting the fire with WD-40. (Doc. No. 1 at ¶ 15.) He also testified that he had been drinking Crown Royal and Coke the night of the fire. (Id.) Mike Scully further testified that he initially concealed how the fire started from the Continental investigator because: (1) he was embarrassed about how the fire started, (2) he thought there might be criminal ramifications because he had been drinking, and (3) he received bad legal advice from a family friend. (Id.) Mike Scully also testified to having thrown out the can of WD-40, without advising Continental, after the Vessel was salvaged and returned to port. (Id.)

On or about September 8, 2009, Continental invoked the "Fraud and Concealment" provision of the Policy to void and rescind the Policy based on "the material misrepresentations and concealments" committed by Mike Scully. (Doc. No.1; Ex. D.) Continental then filed the instant action, seeking relief for voiding the Policy for violation of the "Fraud and Concealment" provision, relief for rescission of the Policy

for misrepresentation and concealment, and declaratory relief. (Doc. No. 1.)

In response, on December 23, 2009, Defendants filed a counterclaim for breach of contract and breach of the covenant of good faith and fair dealing. (Doc. No. 10.) On January 13, 2010, Continental filed this motion to dismiss the counterclaims pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. No. 13) and to strike the jury demand from the Defendants' complaint pursuant to Fed.R.Civ.P. 12(f). (Doc. No. 12.) Defendants oppose both motions. (Doc. No. 17,18.)

## II. LEGAL STANDARD

### A. MOTION TO DISMISS

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth of all factual allegations and must "construe them in the light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964–65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statute on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into a motion for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by* Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

### B.  MOTION TO STRIKE

Rule 12(f) provides that a federal court may strike from the pleadings any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The function of a motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983); Chong v. State Farm Mut. Auto. Ins. Co., 428 F.Supp.2d 1136, 1139 (S.D. Cal. 2006). Rule 12(f) motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1152 (C.D. Cal. 2003). Thus, courts generally grant a motion to strike only where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." LeDuc v. Kentucky Cent. Life Ins. Co., 814 F.Supp. 820, 830 (N.D. Cal. 1992).

### III. DISCUSSION

As mentioned above, Continental has filed a motion to dismiss Defendants' counterclaims pursuant to Fed.R.Civ.P. 12(b)(6) and a motion to strike Defendants' jury demand from their Answer pursuant to Fed.R.Civ.P. 12(f). The Court considers each motion individually.

### A. Plaintiff's Motion To Dismiss Is Denied.

Continental moves under Rule 12(b)(6) to dismiss all of Defendants' counterclaims. Continental argues that the undisputed fact that Mike Scully told two different versions of how the fire started establishes, as a matter of law, the existence of three meritorious affirmative defenses: (1) violation of the "Fraud and Concealment" provision of the Policy, (2) violation of Section 1900 of the California Insurance Code, and (3) rescission of the Policy under Section 1904 of the California Insurance Code. (Doc. No. 13.) As such, Continental argues that there can be no breach of contract or bad faith on behalf of Continental.

In opposition, Defendants refute Continental's ability to seek adjudication as a matter of law under Rule 12(b)(6). Additionally, Defendants argue Continental cannot establish from the face of the counterclaim that it has a dispositive affirmative defense. (Doc. No. 17.) In support, Defendants challenge Continental to provide a single case, reported or unreported, that would substantiate or provide an example of a court granting a motion to dismiss on a similar basis. In reply, Continental ignores the challenge and invites the Court to join them on a path of significant legal pioneering. The Court will not accept the offer.

#### 1. Violation of the "Fraud and Concealment" Provision.

Continental first argues that the Defendants' counterclaim establishes an affirmative defense of a violation of the "Fraud and Concealment" provision of the Policy. In order to void an insurance policy based upon an insured's violation of a

1  standard fraud and concealment clause, the insured's false statement must have been
2  made knowingly and wilfully with the intent of deceiving the insurer. <u>Cummings v. Fire</u>
3  <u>Ins. Exchange</u>, 202 Cal.App.3d 1407, 1415 n.7 (1988). The court must then apply an
4  objective test to determine whether the false statement was material. <u>Id.</u> at 415.
5  Materiality is a mixed question of law and fact that can be decided as a matter of law *if*
6  reasonable minds could not disagree on the materiality of the misrepresentations. <u>Id.</u> at
7  1417.

8    Continental relies on <u>Cummings</u> for the proposition that the inconsistent
9  statements made by Mike Scully permit Continental to deny coverage for an accident
10 otherwise completely covered by the Policy. (Doc. No. 13 at 4–6.)

11   In <u>Cummings</u>, a homeowner submitted a claim against a casualty insurance policy
12 for damages sustained when her home and its contents were vandalized. 202 Cal.App.3d
13 1412. Significantly, the insurance policy did not cover damages that were caused by the
14 insureds, which included relatives who were permanent members of the home. <u>Id.</u> at
15 1417. In a recorded statement, the homeowner initially told an investigator that she
16 had discovered the damage upon returning to her home and had no idea what had
17 happened. <u>Id.</u> at 1413 n.3. During a later examination under oath, the homeowner
18 changed her story and admitted that she had been home and that her son had caused
19 the damage. <u>Id.</u> at 1413.

20   The court granted summary judgment for the insurer because the homeowner had
21 violated the fraud and concealment provision of the policy by intentionally concealing
22 that her son had deliberately vandalized the home. <u>Id.</u> at 1417. The court was satisfied
23 that reasonable minds could not differ regarding the materiality of the homeowner's
24 misrepresentations because they directly implicated the applicability of the insurance
25 policy. <u>Id.</u> at 1417. In other words, the homeowner's false statement triggered the
26 insurance policy in a situation that would not otherwise have been covered, and thus,
27 her intent to deceive the policy was beyond debate.

28

The instant case is distinguishable.  First of all, Cummings involved a motion for summary judgment, not a motion to dismiss. Id. at 1407.  Moreover, even if the Court was inclined to provide the requested relief on a Rule 12 motion, reasonable minds could differ on Mike Scully's intent and the materiality of his false statements.

The Policy provided coverage for all accidents. (Doc. No. 1; Ex A at 2.)  And neither of Mike Scully's accounts—despite their inconsistencies regarding how the fire started—indicate that the fire was something other than an accident.  Thus, based on the limited record and argument before the Court, it appears that the Policy would have provided coverage in either version of the events told by Mike Scully.

This conclusion distinguishes Mike Scully from the homeowner in Cummings.  The false elements of Mike Scully's statement did not trigger the Policy in a situation that would not have otherwise been covered.  Thus, it is presently unclear whether Mike Scully's intent was to defraud the Policy, or whether he was simply trying to avoid embarrassment, or whether he had some other motivation.  Ultimately, that distinction may not matter.  But under the applicable legal standard, the Court believes that reasonable minds could disagree regarding Mike Scully's intent and whether the false statements were material to the insurance claim.  And thus, Continental's motion to dismiss Plaintiffs' counterclaims based upon a violation of the Fraud and Concealment clause can not be granted. Id. at 1417.

### 2. **Violation of Section 1900 of the California Insurance Code and Rescission under Section 1904 of the California Insurance Code.**

Continental next argues that the Defendants' counterclaims establish the affirmative defense of a violation of Section 1900 of the California Insurance Code and the affirmative defense for rescission of the Policy under Section 1904 of the California Insurance Code. (Doc. No. 13.)  Where California marine insurance law and federal admiralty law are materially the same, the court will apply California law. See Certain Underwriters at Lloyd's v. Montford, 52 F.3d 219, 222 n.1 (9th Cir.1995).

Section 1900 of the California Insurance Code embodies the doctrine of *uberrimae fidei* and imposes on each party an "uttermost good faith" duty to disclose:

> (a) All the information which he possesses and which is material to the risk, except such as is exempt from such communication in the case of other insurance;
> (b) The exact and whole truth in relation to all matters that he represents or, upon inquiry assumes to disclose.

Id; Cal.Ins.Code § 1900. Additionally, if a representation by the insured is intentionally false in any respect, whether material or immaterial, the insurer may rescind the entire contract under California marine insurance law. Cal.Ins.Code § 1904.

Continental points to California marine insurance law for the proposition that Mike Scully's inconsistent accounts of how the fire occurred allow Continental to declare the contract void *ab initio*. (Doc. No. 20.) In opposition, the Defendants argue Continental has misconstrued the doctrine of *uberrimae fidei* which applies to initial disclosures in applications for marine insurance, not investigations of insurance claims. See Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc., 518 F.3d 645, 651 (9th Cir. 2008); citing Ingersoll Milling Machine Co. v. M/V Bodena, 829 F.2d 293, 308 (2d Cir.1987).

In response, Continental argues the doctrine of *uberrimae fidei* is equally applicable to the context of insurance claims and provides two cases in support of its contention. (Doc. No. 20); citing Pacific Ins. Co. v. Kent, 120 F.Supp.2d 1205 (C.D. Cal. 2000); Andrade v. Jennings, 54 Cal.App.4th 307(1997). Neither case provides support for Continental's argument.

In Pacific, a marine insurer sought to rescind an insurance policy and moved for summary judgment because the insured: (1) misrepresented and concealed material facts when he applied for his policy and; (2) lied under oath after filing the insurance claim. Pacific, 120 F.Supp.2d at 1210. The court rescinded the policy and granted summary judgment in favor of the insurer based on the insured's misrepresentations and omissions

1 on the policy application. Id. at 1214. As a result, however, the court never reached the
2 insurer's theory that it was entitled to rescission because the insured lied under oath. Id.
3 Unlike Pacific, Continental has moved to dismiss on the pleadings, this is not a motion
4 for summary judgment. Moreover, Continental seeks to apply the doctrine of *uberrimae*
5 *fidei* solely to the Defendants' misrepresentations during the insurance claims process,
6 not the Defendants' insurance application.

7 In Andrade, the court found the insured had a duty not to manipulate the
8 insurance claim to the insurer's detriment. 54 Cal.App.4th at 328. However, the court
9 made no mention of the doctrine of *uberrimae fidei* or the aforementioned California
10 marine insurance law. The court in Andrade was also reviewing a trial court's judgment
11 that had been entered on a jury's verdict. Id. In contrast, Continental relies exclusively
12 on the doctrine of *uberrimae fidei* to establish its affirmative defenses under Section 1900
13 and Section 1904 of the California Insurance Code. And, as previously mentioned, this
14 is a motion to dismiss pursuant to Rule 12(b)(6). As such, the Court finds Continental
15 has failed to provide any legal support for their contention that the doctrine of *uberrimae*
16 *fidei* is applicable to the instant motion.

17 For the foregoing reasons, the Court finds that Continental has failed to provide
18 a sufficient legal basis to substantiate its entitlement to prevail on the Defendants'
19 counterclaims at the pleading stage.

20 Accordingly, the Court **DENIES** Continental's motion to dismiss. (Doc. No. 13.)

22 **B.    Plaintiff's Motion To Strike Is Denied.**

23 Continental has also moved, pursuant to Rule 12(f), to strike the Defendants' jury
24 demand from their Answer. Continental argues that this action was specifically
25 designated as an admiralty and maritime claim within the meaning of Rule 9(h), and as
26 such, no right to a jury exists. (Doc. No. 12.) In opposition, Defendants argue they are
27 entitled to a jury as to their state law counterclaims and all of Continental's claims
28 under the Seventh Amendment and Rule 38. (Doc. No. 18.)

If a defendant would have been entitled to a jury trial it cannot be deprived of that right merely because the plaintiff took advantage of the availability of declaratory relief to sue the defendant first. <u>Wilmington Trust v. U.S. Dist. Court for Dist. of Hawaii</u>, 934 F.2d 1026, 1030 n.5 (9th Cir. 1991); citing <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 504, 509 (1959). The liberal joinder rules permit "legal and equitable causes to be brought and resolved in one civil action" and preserve any statutory or constitutional right to a jury trial. Id. The same concerns exist when parties join admiralty claims with claims to which a right to a jury trial attaches. <u>Wilmington</u>, 934 F.2d at 1032.

Continental does not refute that the Defendants are entitled to a jury as to their state law counterclaims. Rather, Continental relies on its pending motion to dismiss to argue that the Defendants' counterclaims should not be considered in deciding whether the jury demand should be stricken from the Answer. (Doc. No. 21.) However, in light of the Court's finding that Defendants' counterclaims should survive dismissal, the Court finds that the Defendants are entitled to a jury demand as to their state law counterclaims. Therefore, Continental's motion to strike the jury demand from Defendants' Answer is moot.[1]

Accordingly, the Court **DENIES** Continental's motion to strike. (Doc. No. 12.)

//
//
//
//
//

---

[1] Although the ultimate determination is preserved for another day, the present ruling may result in the entire case being tried before a jury. See <u>Wilmington</u>, 934 F.2d at 1032; citing <u>Fitzgerald</u>, 374 U.S. at 21 (all claims must be submitted to jury when they "arise out of one set of facts").

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Continental's motion to dismiss (Doc. No. 13) and **DENIES** Continental's motion to strike. (Doc. No. 12.)

**IT IS SO ORDERED.**

DATED: July 12, 2010

_____
Hon. Thomas J. Whelan
United States District Judge